1

2

3

4

5

6

7

8

9                       IN THE UNITED STATES DISTRICT COURT

10                          FOR THE DISTRICT OF ARIZONA

11

12   Ky Ngoc Truong,                    )     No. CV 04-2208-PHX-MHM (MS)
                                         )
13              Petitioner,              )
                                         )
14   vs.                                 )     **SUPPLEMENTAL   REPORT   AND**
                                         )     **RECOMMENDATION**
15                                       )
     Alberto Gonzales, et al.,           )
16                                       )
                Respondents.             )
17                                       )
                                         )
18   _____   )

19   **To The Honorable Mary H. Murguia, United States District Judge:**

20          Petitioner, who is represented by counsel,[1] filed a "Petition for Writ of Habeas

21   Corpus with Stay of Removal" pursuant to 28 U.S.C. section 2241 on October 18,

22   2004 ("original Petition").  [Doc. # 1].[2]  Pursuant to the Court's Order (Doc. # 42), a

23   _____

24          [1]  Petitioner states that he has been confined at the Bureau of Immigration
     and Customs Enforcement ("ICE") detention facility in Eloy, Arizona, since October
25   15, 2004. [Doc. # 1].

26          [2]  Petitioner previously filed a Petition for Writ of Habeas Corpus pursuant to
27   28 U.S.C. § 2241 in this Court which contained claims related to the claims in the
     instant Petition and Amended Petition. [See CV 03-699-PHX-MHM (MS)].  That
28   Petition was dismissed without prejudice. [Doc. # 20].

1  Second Amended Petition ("Amended Petition") was subsequently filed. [Doc. # 31].

2  The undersigned submitted a Report and Recommendation on February 22, 2006

3  recommending that Grounds One and Two of Petitioner's habeas petition be

4  transferred to the Ninth Circuit Court of Appeals pursuant to the REAL ID Act of

5  2005, and that Ground Three be dismissed for failure to exhaust administrative

6  remedies. (Doc. # 60). On March 31, 2006, the Report and Recommendation was

7  rejected in part and adopted in part, remanding Grounds One and Two to the

8  undersigned for an analysis on their merits.

9       Upon review of the Second Amended Petition, the response, reply, and

10  record, the undersigned reports and recommends as follows:

11  **I.      BACKGROUND**

12      The facts of Petitioner's case have been articulated in detail in the

13  undersigned's original Report and Recommendation [see Doc. # 60 at 2-12]. As a

14  result, the facts will not be recited here.

15  **II.     JURISDICTION**

16      District courts generally have subject matter jurisdiction over habeas petitions

17  filed pursuant to 28 U.S.C section 2241 where the petition alleges constitutional or

18  statutory error. INS v. St. Cyr, 533 U.S. 305, 308 (2001); Flores-Miramontes v. INS,

19  212 F.3d 1133 (9th Cir. 2000); Magana-Pizano v. INS, 200 F.3d 603 (9th Cir. 1999).

20  Section 2241 "does not specifically require petitioners to exhaust direct appeals

21  before filing petitions for habeas corpus." Laing v. Ashcroft, 370 F.3d 994, 997 (9th

22  Cir. 2004) (citing Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001)).

23  Because Petitioner has alleged both statutory and constitutional error in the

24  adjudication of his adjustment of status application and in his I-360 petition, this

25  Court has jurisdiction to review Petitioner's claims.

26  **III.    ANALYSIS**

27      A.  Ground One - The BIA's Decision Terminating Proceedings

28

1    Petitioner first argues that the BIA's January 6, 2003 order terminating

2  Petitioner's adjustment of status and removal proceedings was legal error because

3  the BIA misinterpreted the facts of Petitioner's adjustment of status application under

4  relevant law. [Doc. # 43 at 3].

5    In support of this contention Petitioner argues that his case is governed by

6  Molina-Camacho v. Ashcroft, 393 F.3d 937 (9th Cir. 2004), where the Ninth Circuit

7  determined that the BIA was without authority to enter an order of removal, and

8  therefore remanded the case to the IJ for further proceedings.  In so holding, the

9  Ninth Circuit regarded the BIA's decision as a "legal nullity."  Id. at 940.  Petitioner

10  argues that Molina-Camacho applies with equal force to his case as it presents

11  another scenario where the BIA acted without statutory authority.  As a result,

12  Petitioner argues, he has been unable to file a petition for review or motion to

13  reconsider the BIA's decision because the BIA's order terminating proceedings is

14  also "a legal nullity," thereby leaving Petitioner in open removal proceedings before

15  the IJ.

16    Molina-Camacho invalidated an order of deportation issued by the BIA after

17  an Immigration Judge granted relief from removal.  The Ninth Circuit explicitly found

18  that the BIA was statutorily without jurisdiction to issue orders of removal, and

19  therefore deemed the order of deportation void.  Molina-Camacho, 393 F.3d at 941.

20  The Ninth Circuit succinctly explained that 8 C.F.R. Part 1240.12(c) enumerates the

21  power of Immigration Judges, "[t]he order of the Immigration Judge *shall direct* the

22  respondent's removal, or the *termination of the proceedings*, or such other

23  disposition of the case as may be appropriate."  Molina-Camacho, 393 F.3d at 940

24  (emphasis added).  This power is contrasted with the authority granted to the BIA,

25  that "[t]he Board shall function as an appellate body charged with the review of

26  those administrative adjudications under the Act."  8 C.F.R. § 1003.1(d)(1).

27    Petitioner interprets Molina-Camacho's effect on BIA issued orders of removal

28  to extend to BIA orders terminating proceedings.  The Court agrees with Petitioner.

1   The Ninth Circuit's opinion is crystal clear.  Immigration judges are empowered to

2   terminate proceedings.  The BIA is not.  As in Molina-Camacho, Respondents here

3   have not identified a statute which empowers the BIA to terminate proceedings,

4   instead arguing that Molina-Camacho's holding only impacts BIA-issued orders of

5   removal.   That interpretation is not consistent with a fair reading of Molina-

6   Camacho.  As a result, the Court will recommend that Ground One of Petitioner's

7   habeas petition be granted and Petitioner's case remanded to the IJ for further

8   proceedings pursuant to Molina-Camacho.

9          This leaves the question of what should occur upon remand to the IJ.  At a

10   minimum, the undersigned recommends that this case be remanded to the IJ to

11   terminate proceedings, from which Petitioner can appeal to the BIA.  However,

12   Petitioner further argues that he is entitled to adjust his status to that of a lawful

13   permanent resident.

14               1.  The IJ's Decision to Adjust Petitioner's Status

15          The IJ granted Petitioner's adjustment of status application pursuant to INA

16   §245(a) holding that "'any alien admitted as a visa waiver pilot program visitor under

17   the provisions of Section 217 of the Act, and part 217 of this chapter, *other than an*

18   *immediate relative as defined in Section 201(b) of the Act.'  Section 201(b)(2)(A) of*

19   *the Act clearly includes the children of citizens of the United States.*" [Doc. # 25, Ex.

20   8].  The IJ further held that "the application for adjustment of status under Section

21   245(i) of the Act is granted."   In essence, the IJ granted Petitioner's adjustment

22   application under two different provisions of Section 245.

23          Respondents correctly argue that the IJ's approval of Petitioner's adjustment

24   application under § 245(a) was based on legal error.  Petitioner is not a "child" under

25   the definition of INA Section 201(b)(2)(A)(i) as he was over 21 years of age when his

26   status was adjusted to that of a lawful permanent resident.  However, Petitioner

27   never raised this issue in his appeal to the BIA.  Petitioner has maintained the he

28   has not appealed the denial of his adjustment of status application because the

1   BIA's order terminating proceedings was *ultra vires*, and therefore jurisdiction

2   remains with the IJ.  As this Court has found, Petitioner's case should be remanded

3   to the BIA for further proceedings and the Court recommends that Petitioner be

4   permitted to present his argument regarding adjustment of status at that time.[3]

5          Respondents urge this Court to find that Petitioner is without recourse as he

6   entered the United States under the Visa Waiver Program, and is thus ineligible for

7   any relief other than an asylum petition.  Petitioner argues that the recent decision

8   by the Ninth Circuit specifically addresses the scenario where an alien enters the

9   United States under the Visa Waiver Program and applies to adjust his or her status

10  to that of a lawful permanent resident.  Freeman v. Gonzales, No. 04-35797, 2006

11  WL 1044220, at *3 (9th Cir. April 21, 2006).  The Ninth Circuit observed that "VWP

12  entrants waive their right to challenge any removal action other than on the basis of

13  asylum (the no-contest clause).  They are, however, allowed to seek adjustment of

14  their status by filing an immediate relative petition."   Id.   See also U.S.C. §

15  1255(c)(4); Faruqi v. Dep't of Homeland Security, 360 F.3d 985, 986-87 (9th Cir.

16  2004) (articulating that VWP visitors are eligible for adjustment of status).

17         Freeman is inapposite to Petitioner's case.  Section  1255(c)(4) permits an

18  alien who enters the United States under the VWP to adjust his status as "an

19  immediate relative as defined in section 1151(b)" of the United States Code.

20  Petitioner is *not* an immediate relative as defined under 1151(b) of the code.

21  Instead, Petitioner falls into the category described in 1151(a) of the code as an

22  unmarried son over the age of 21 of a United States citizen.  See 8 U.S.C. §

23

24        [3] Because the IJ based his decision on two provisions of § 245, and one of
25  those provisions does not support the IJ's decision, Petitioner should have an
    opportunity to present his argument in favor of an adjustment of status pursuant to
26  only § 245(i). This conclusion is bolstered by the USCIS's determination that
    Petitioner's adjustment application was granted "under section 245(i) of the Act, 8
27  U.S.C. § 1255(i), based upon an approved petition as an unmarried son." [Doc. #
28  31, Ex. 5].

1   1151(a).  As a result, <u>Freeman</u> does not support Petitioner's argument that he was

2   entitled to adjust his status.

3        However, as the Court has found, because the IJ used two different bases for

4   granting Petitioner's adjustment of status application, on remand the BIA shall

5   determine whether Petitioner is entitled to adjust his status pursuant to §245(i) of the

6   INA.[4]

7        As a result, this Court will recommend that Ground One of Petitioner's habeas

8   petition be granted and remanded to the BIA for a new adjudication of whether

9   Petitioner may adjust his status.

10        B.  Ground Two - Denial of Petitioner's I-360 Petition

11        Petitioner's second ground for relief challenges the USCIS's decision denying

12   Petitioner's I-360 petition seeking protection as a battered spouse of a United States

13   citizen.

14        The USCIS's decision should be upheld if it is supported by substantial

15   evidence.  <u>See INS v. Aguirre-Aguirre</u>, 526 U.S. 415 (1999) (the deferential standard

16   announced in <u>Chevron U.S.A., Inc. v. Natural Resources Defense Counsel</u>, 467 U.S.

17   867 (1984), which applies to agency determinations, applies with equal force in

18   immigration cases).   The substantial evidence standard will require this Court to

19   uphold the USCIS's determination as to Petitioners I-360 petition if it is supported by

20   "reasonable, substantial and probative evidence on the record."   <u>INS v. Elias-</u>

21   <u>Zacarias</u>, 502 U.S. 479, 481 (1992).  For Petitioner to demonstrate that the USCIS's

22   determination was not supported by substantial evidence, Petitioner must show that

23   evidence compels the conclusion that the findings and decisions were erroneous.

24   <u>Singh-Kaur v. INS</u>, 183 F.3d 1147, 1149 (9th Cir. 1999).

25

26        [4] Section 245(i) of the INA provides that "[n]otwithstanding the provisions of

27   subsections (a) and (c) of this section, an alien physically present in the United

     States" who may be ineligible for adjustment of status may adjust his status to that

28   of a lawful permanent resident if he pays a penalty fee.

1    The I-360 petition provides that:

2        A spouse may file a self-petition under section
3    204(a)(1)(A)(iii) or 204(a)(1)(B)(ii) of the Act for his or her
     classification as an immigrant relative or as a preference
     immigrant if he or she:

4
         (A) Is the spouse of a citizen or lawful permanent resident of the United
5        States;
         (B) Is eligible for immigrant classification under
6        201(b)(2)(A)(i) or 203(a)(2)(A) of the Act based on that
         relationship;

7
         (C) Is residing in the United States;
8
         (D) Has resided with the citizen or lawful permanent resident spouse;
9
         (E) Has been battered by, or has been the subject of extreme cruelty
10       perpetrated by, the citizen or lawful permanent resident during the
         marriage; or is the parent of a child who has been battered by, or has
11       been the subject of extreme cruelty perpetrated by, the citizen or lawful
         permanent resident during the marriage;

12
         (F) Is a person of good moral character; [and]
13
         (G) Entered into the marriage to the citizen or lawful permanent
14       resident in good faith.

15   8 C.F.R. § 204.2(c)(1)(i).   Petitioner claimed that he was subjected to extreme

16   emotional cruelty by his wife.  He did not argue that he was subjected to physical

17   abuse, nor did he argue that their child was subjected to abuse of any kind.

18        Petitioner's I-360 petition was denied by USCIS for two reasons. First, USCIS

19   found that Petitioner had not established that Petitioner and his spouse shared a

20   residence.  USCIS noted that Petitioner's I-360 petition stated that Petitioner and his

21   spouse stopped living together on May 1, 2004.

22        Petitoner submitted evidence that he and his wife shared a residence.  This

23   evidence included: (1) a 2003 property tax statement addressed to Petitioner and his

24   spouse at 19012 N. 39th Street, Phoenix, Arizona; (2) a quitclaim deed dated July

25   21, 2002, conveying a community property interest in Lot 81, Trovare Unit 11, to

26   Petitioner's wife; (3) a 2004 and 2005 property valuation addressed to the petitioner

27   and his spouse at 19012 N. 39th Street, Phoenix Arizona; (4) two joint bank account

28   statements dated September 28, 2004 and October 27, 2004; (5) an undated void

1   check from Bank of America; (6) joint tax returns for 2002 and 2003 addressed to the

2   petitioner and his spouse at 19012 N. 39th Street, Phoenix, Arizona; and (7) a motor

3   vehicle registration in the petitioner's name alone dated January 16, 2003.

4   USCIS found the Petitioner had not established a shared residence with his

5   spouse. In support of this finding, USCIS stated that the bank statements post-dated

6   Petitioner's separation from his wife, and therefore they are not evidence of a shared

7   residence. Additionally, USCIS determined that a blank check is not evidence of a

8   shared residence. As to the property records, USCIS stated that Petitioner's failure

9   to produce "joint mortgages or rental agreements," "coplies of insurance policies

10  listing a common address for the petitioner and his spouse, or "copies of utility bills

11  listing a common address" led to the conclusion that Petitioner had not

12  demonstrated his shared residence with his wife.

13  The only probative evidence that Petitioner submitted to demonstrate a shared

14  residence was the property tax valuations and joint tax returns. However, all of the

15  other evidence Petitioner submitted did not support a finding of shared residence.

16  Because Petitioner was informed of the types of evidence he should submit to prove

17  a shared residence, see Doc. # 31, Ex. 5 at 4, and Petitioner failed to do so, the

18  Court finds that USCIS's determination that Petitioner did not show a shared

19  residence with this spouse is supported by substantial evidence.

20  The second reason USCIS denied Petitioner's I-360 petitioner was Petitioner's

21  failure to produce evidence amounting to extreme cruelty, defined in 8 C.F.R. §

22  204.2(c)(1)(vi) as, "[p]sychological or sexual abuse or exploitation . . . ." Hernandez

23  v. Ashcroft, 345 F.3d 824 (9th Cir. 2003) specifically addresses the conduct which

24  would rise to the level of extreme cruelty and warrant relief under an I-360 petition.

25  Hernandez involved an extremely violent relationship between a husband and wife.

26  The Ninth Circuit explained that extreme cruelty can indicate nonphysical aspects

27  of domestic violence, including acts that "may not initially appear violent but that are

28  part of an overall pattern of violence."   Id. at 839; 8 C.F.R. § 204.2(c)(1)(vi).

1    Petitioner submitted his I-360 petition, which included a "checklist" of items to
2  identify if the petitioner was subjected to abuse.  Petitioner identified the following
3  as being present in his relationship with his wife: (1) locked him out of his house; (2)
4  criticized him sexually; (3) forced him to engage in sex with her; (4) ignored his
5  feelings; (5) ridiculed or insulted him; (6) withheld approval, appreciation, or affection
6  as punishment; (7) continually criticized him, calling him names; (8) shouting at him,
7  "nothing is ever good enough"; insulted my friends and/or family; (9) humiliated him
8  in private or public; (10) refused to socialize with him; (11) kept him from working,
9  controlled his money, made all the decisions; (12) refused to work or share money;
10  (13) taken money away; (14) regularly threatened to leave or told him to leave; (15)
11  punished or deprived the children when she was angry at him; (16) threatened to
12  kidnap the children if he left[5]; (17) blamed him for any problems with the children.
13  [Doc. # 46, at 1147-51].

14    In support of these contentions, Petitioner submitted two letters from family
15  friends, a letter from Alvin C. Burnstein, M.D. based on a one-hour clinical interview,
16  and a letter from Gray Buchik indicating that Petitioner was in counseling. [Doc. # 46,
17  at 1138-47].

18    These letters do not detail specific instances of emotional abuse as required
19  by USCIS. [See Doc. # 46, at 1154-57]  They demonstrate, at best, that Petitioner
20  and his wife had a very tumultuous marriage.  However, they do not demonstrate
21  that Petitioner's wife was abusive toward Petitioner.  Petitioner avers that the
22  relentless phone calls his wife made to his place of employment caused him to lose
23  his job.  While this is evidence of a troubled marriage, it does not rise to the level of
24  abuse articulated in Hernandez, as Petitioner alleges.

25

26

27
      [5] Petitioner averred that his wife threatened to change their child's name if
28  they divorced.

1  Based on the letters Petitioner submitted in support of his I-360 petitioner, this

2  Court cannot say that the USCIS's determination denying Petitioner relief was not

3  supported by substantial evidence.  As a result, the Court will recommend that

4  Ground Two of Petitioner's habeas petition be denied.

5  **IV.   RECOMMENDATION**

6  Based on the foregoing analysis,

7  **IT IS RECOMMENDED** that:

8  1.   Ground One of Petitioner's Petition for Writ of Habeas Corpus be

9  **GRANTED** and his case **REMANDED** to the BIA for further proceedings.

10  2.  Ground Two of Petitioner's Petition for Writ of Habeas Corpus be **DENIED**

11  and **DISMISSED** with prejudice.

12  This recommendation is not an order that is immediately appealable to the

13  Ninth Circuit Court of Appeals.  Any notice of Appeal pursuant to Rule 4(a)(1),

14  Federal Rules of Appellate Procedure, should not be filed until entry of the district

15  court's judgment.  The parties shall have ten (10) days from the date of service of

16  a copy of this recommendation within which to file specific written objections with the

17  Court.  28 U.S.C. §636(b)(1) and Rules 72, 6(a) and 6(e) of the Federal Rules of

18  Civil Procedure.  Failure to timely file objections to any factual determinations of the

19  Magistrate Judge will be considered a waiver of a party's right to *de novo*

20  consideration of the factual issues and will constitute a waiver of a party's right to

21  appellate review of the findings of fact in an order or judgment entered pursuant to

22  the Magistrate Judge's recommendation.

23  DATED this 12th day of May, 2006.

24

25

26

27  _____
   Morton Sitver
28  United States Magistrate Judge

- 10 -